NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| FACTA HEALTH, INC., et al., | : | |
| Plaintiffs | : | Civil Action No. 20-9631 (SRC) |
| | : | |
| v. | : | |
| | : | OPINION |
| | : | |
| PHARMADENT, LLC, et al., | : | |
| Defendants. | : | |

**CHESLER**, District Judge

    This matter comes before the Court on a motion to confirm an Arbitration Award brought by Defendants Pharmadent, LLC ("Pharmadent"), Alan Wickenhauser, and Stephen Peipert (collectively, "Defendants"). Plaintiffs Facta Health, Inc. ("Facta"), Frank J. Cozzarelli, Robert Mangone, Paul Kapp, Robert Laudadio, and Gotta Guy, Inc. (collectively, "Plaintiffs") oppose the motion and have filed a cross-motion to vacate the Arbitration Award. The Court, having considered the papers filed by the parties, proceeds to rule on the motions without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons that follow, the Court will grant Defendants' motion and deny Plaintiffs' cross-motion.

    **I.**    **Background**

    This dispute concerns a Patent Purchase Agreement ("PPA") through which Pharmadent sold to Facta various patents and other intellectual property associated with a topical anesthetic developed by Pharmadent's principals (the "product"). In return, Pharmadent received a $400,000 initial payment and a royalty payment plan. The royalty plan included a $3,000,000 advance on royalties following the approval of a formulation of the product by the Food and Drug

Administration ("FDA") or the Department of Defense ("DOD"). The PPA contemplated the parties working together to obtain these approvals for the product.

Pharmadent and Facta began their relationship working cooperatively, but conflict ultimately arose. First, in April 2019, following a dispute around the initial $400,000 payment that led to the filing of an arbitration proceeding and a state court action, the parties entered into the First Amendment to the Patent Purchase Agreement ("First Amendment"). The First Amendment, among other things, clarified details concerning the initial $400,000 payment, and provided that Pharmadent would pay up to $400,000 of costs that would be incurred seeking FDA and DOD approval. Later, the parties entered into the Second Amendment of the Patent Purchase Agreement ("Second Amendment") which detailed the parties' transfer obligations.

Alas, the relationship between the parties continued to deteriorate.[1] Ultimately, Plaintiffs commenced an arbitration proceeding with the American Arbitration Association ("AAA") against Defendants on May 7, 2020. Plaintiffs alleged, <u>inter alia</u>, breach of contract, fraudulent inducement, patent infringement, and breach of fiduciary duties. Defendants asserted various defenses and added contractual counterclaims against Plaintiffs. Shortly thereafter, on June 11, 2022, Plaintiffs filed this action against Defendants in the New Jersey Superior Court seeking declaratory and injunctive relief. Defendants removed the action to this Court. (ECF No. 1). Defendants then moved to stay the litigation and compel arbitration, which the Court granted. (ECF No. 14, 15).

The arbitration proceeded to a Final Award. The Arbitration Panel (the "Arbitrators" or

---

[1] The Court will not recount the details of the deterioration of the parties' relationship when the parties dispute the facts, and it is not necessary for the Court's limited role in reviewing an arbitration award.

2

the "Panel") rejected all Plaintiffs' claims. The Panel granted Defendant's contractual counterclaims, concluding Facta breached the PPA by terminating a Pharmadent principal responsible for overseeing the testing of the product, and breached the implied covenant of good faith and fair dealing by otherwise interfering with this testing. The Panel crafted a remedy where it rescinded the PPA, while allowing Pharmadent to keep Facta's initial $400,000 payment. Defendants filed a motion in this action to confirm the Arbitration Award. In response, Plaintiffs filed a cross-motion to vacate the Arbitration Award.[2]

## II. Discussion

### A. Legal Standard

Judicial review of an arbitration award is strictly limited. There is a "strong presumption" under the Federal Arbitration Act ("FAA") in favor of enforcing arbitration awards. France v. Bernstein, 43 F.4th 367, 377 (3d Cir. 2022) (quoting Hamilton Park Health Care Ctr. Ltd. v. 1199 SEIU United Healthcare Workers E., 817 F.3d 857, 861 (3d Cir. 2016)). Courts will only vacate an arbitration award "'under [the] exceedingly narrow circumstances' listed in 9 U.S.C. § 10(a)." Id. (alteration in original) (quoting Freeman v. Pittsburgh Glass Works, LLC, 709 F.3d 240, 251 (3d Cir. 2013)). Four circumstances are listed in 9 U.S.C. § 10(a):

(1) where the award was procured by corruption, fraud, or undue means;

---

[2] This matter's path to disposition has been longer and more complex than most motions to confirm or vacate an arbitration award. After reviewing the parties' briefs, the Court issued a single Order (ECF No. 48) striking a certification (the "Hittman Certification") filed by Plaintiffs for containing legal argument in violation of Local Rule 7.2(a) and requesting supplementary briefing on the issue of the Panel's rescission remedy. Plaintiffs, however, submitted a brief arguing the Hittman Certification was proper under Local Rule 7.2(a). The Court, recognizing some ambiguity in its Order, afforded Plaintiffs a second opportunity to brief the rescission issue. (ECF No. 59). It also decided to consider the Hittman Certification to the extent it complies with Local Rule 7.2(a). (ECF No. 58).

3

> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a); see also CPR Mgmt, S.A. v. Devon Park Bioventures, L.P., 19 F.4th 236, 245 (3d Cir. 2021) (listing these circumstances as the exclusive grounds to vacate an arbitration award). Courts may only consider these circumstances, and they are not permitted to consider whether an arbitrator committed an error of law. Sun Ship, Inc. v. Matson Navigation Co., 785 F.2d 59, 62 (3d Cir. 1986). This standard of review is "extremely deferential," France, 43 F.4th at 377, and the party moving to vacate an arbitration award pursuant to § 10(a) bears the burden of proof, PG Pub'g, Inc. v. Newspaper Guild of Pittsburgh, 19 F.4th 308, 314 (3d Cir. 2021).

    B.  Violative of Law, Misconduct, and Exceeding Powers

Plaintiffs argue the Court should vacate the Award because it is "violative of law." They assert various aspects of the Award and the arbitration process violated state and federal law. Specifically, they assert: the Arbitrators did not hear certain dispositive motions; the Arbitrators failed to apply certain preclusion doctrines; the Arbitrators erred in admitting certain expert testimony; the Arbitrators did not apply New Jersey contract principles to interpret the PPA; the Arbitrators did not apply federal patent law; and the Arbitrators' rescission remedy was improper.

Plaintiffs assert legal error. An error of law is not a basis to vacate an arbitration award. See 9 U.S.C. § 10(a); France, 43 F.4th at 377. The Court will, however, consider these arguments through the lens of 9 U.S.C. § 10 (a)(3) and § 10(a)(4).

First, § 10 (a)(3) provides an award may be vacated "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3). "'Misconduct' is conduct that 'so affects the rights of a party that it may be said that he was deprived of a fair hearing.' A 'fair hearing' is one where the parties have notice and an opportunity to present evidence and arguments before an impartial arbitrator." CPR Mgmt., 19 F.4th at 245 (quoting Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co., 397 F.2d 594, 599 (3d Cir. 1968)).

Second, § 10 (a)(4) provides an award may be vacated if "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). Vacatur of an arbitration award under § 10(a)(4) is only appropriate when the arbitrator "decides an issue not submitted to him, grants relief in a form that cannot be rationally derived from the parties' agreement and submissions, or issues an award that is so completely irrational that it lacks support altogether." Sutter v. Oxford Health Plans LLC, 675 F.3d 215, 219-20 (3d Cir. 2012).

Even if, assuming arguendo, Plaintiffs' assertions all correctly identify legal error, they do not individually or collectively amount to misconduct or irrationality on behalf of the Panel. Nor has the Court found anything in the record that suggests the Panel committed misconduct or acted irrationally in light of the PPA.[3]

---

[3] In reviewing the record, the Court's analysis is extremely limited. The Court has not considered whether the Panel correctly decided issues of law. Instead, the Court has merely determined that the Arbitrators properly decided issues before it in a manner permitted within the wide bounds of § 10(a)(3) and § 10(a)(4).

1.  Dispositive Motions

Plaintiffs assert the Arbitrators erred by not hearing any of their dispositive motions. Rule R-33 of the AAA Commercial Arbitration Rules grants the Arbitrators discretion to hear such motions based on whether "the moving party has shown that the motion is likely to succeed and dispose of or narrow the issues in the case." AAA Commercial Arb. R. R-33. Accordingly, the Panel asked the parties to address this standard in their applications for dispositive motions. (Arb. Pro. Order 2 at 3). The Panel denied Plaintiffs' application for dispositive motions for two primary reasons. First Plaintiffs failed to address this standard in their application. Second, many of Plaintiffs' motions concerned issues with factual disputes. The Panel wanted these issues to be addressed following the evidentiary hearing. (Arb. Pro. Order 3 at 3-4). In making this determination in compliance with Rule R-33, the Panel did not deny Plaintiffs the opportunity for a fair hearing. Therefore, it did not commit misconduct. For substantially the same reasons, the Panel did not act irrationally by declining to hear these motions, and so it did not exceed its authority under the PPA.

2.  Preclusion

Plaintiffs assert the Panel, over the course of the arbitration, failed to apply various preclusion doctrines, including the Entire Controversy Doctrine, various estoppel theories, and New Jersey law governing the enforcement of settlements. Despite citing different doctrines, the Court understands Plaintiffs' preclusion arguments to boil down to a common assertion, that claims that were brought or could have been brought in the arbitration preceding the First

Amendment are precluded, either through New Jersey preclusion doctrines or by the execution of the First Amendment.[4]  Contrary to Plaintiffs' arguments, the Panel did not commit misconduct.[5]

First, to the extent Plaintiffs assert the Panel committed misconduct by failing to consider their pre-hearing dispositive motions, that issue is addressed in the subsection above.  As Procedural Order 3 explains, there was an insufficient factual record to address the preclusion issues at the outset of the arbitration.  The Panel's decision to not resolve the issue at that time was consistent with the AAA Commercial Arbitration Rules, and it did not deny Plaintiffs a fair arbitration process.

Second, to the extent Plaintiffs assert the Award should be vacated because the Panel failed to apply these preclusion doctrines in its Final Award, that argument also fails because the Court cannot conclude the Panel committed misconduct.  Critically, the Court has reviewed the record provided by Plaintiffs and concludes Plaintiffs waived these arguments by failing to include them in their post-hearing briefing.[6]  Procedural Order 8 and the Panel's instructions at the conclusion of the hearing provided that all legal arguments must be included in the post-hearing briefing.

---

[4] Even if the Court's understanding of Plaintiffs' preclusion arguments is off the mark, the analysis—based on waiver and a failure to adequately develop the preclusion theories—applies with equal force.

[5] The Court understands Plaintiffs preclusion arguments to fall under the rubric of arbitrator misconduct pursuant to § 10(a)(3) because they concern an asserted omission on behalf of the Panel.  However, Plaintiffs arguments would also fail under § 10(a)(4) because the Panel did not act irrationally regarding preclusion for substantially the same reasons it did not commit misconduct, as explained below.  Nor did the Panel decide an issue that was not committed to it.

[6] Procedural Order 8, which details briefing guidelines, appears to call for two briefs from each party, simultaneously submitted opening briefs and simultaneously submitted responsive briefs.  Plaintiffs only included one brief per party in their appendix, labeled Exhibits J and L.  Plaintiffs also include supplementary briefing on rescission requested by the Panel in Procedural Order 9, labeled as Exhibits N and O.  If there was additional briefing which was not included, the consequence of that omission falls on Plaintiffs, as they bear the burden of showing misconduct.

(Arb. Pro. Order 8 at 2 (asking the parties to "confirm or reaffirm your respective claims, counterclaims, and affirmative defenses" in the post-hearing briefing); Trans. 1077:10-13 ("As to content, your [post-hearing] submissions obviously should contain whatever submission arguments you want to make, any legal argument you want to make to us.")). Plaintiffs reference to anything resembling a preclusion argument in their post-hearing briefing is passing at best. (See Pl. Post-Hearing Br. at 7 n.7 (referencing the Panel's refusal to hear summary judgment on unnamed dispositive issues); id. at 3, 8, 15 (asserting the First Amendment settled earlier litigation and arbitration without elaboration)). Additionally, Plaintiffs may not raise arguments by reference to prior filings. United States v. Gonzalez, 905 F.3d 165, 206 n.18 (3d Cir. 2018). Accordingly, Plaintiffs' failure to include these arguments in their post-hearing briefing constitutes waiver.

Even absent the Panel's instructions, fairness requires that all of a party's legal arguments should be included in its final summation of its position. Such an omission denies an adversary a meaningful opportunity to respond to an omitted argument. The Panel cannot be expected to respond to every argument made by a party over the course of the arbitration when they are not included in the post-hearing briefing. Omitting a prior argument from a post-hearing brief does not give a party an easy vacatur if the Panel does not analyze that argument in its Final Award. In short, the Panel's failure to respond to an issue which did not appear in Plaintiffs' post-hearing briefing did not deny them an opportunity for a fair hearing, and therefore, the Panel did not commit misconduct. Cf. Gonzalez, 905 F.3d at 206 n.18 (holding issues are waived when they are not raised in appellate briefs and only introduced through a cross-reference to trial court briefing).

Even if Plaintiffs did not waive their preclusion arguments by failing to include them in their post-hearing briefing, the Court does not see a well-articulated, viable preclusion argument on the face of Plaintiffs' filings and the record. Plaintiffs' filings, both before this Court and before the Panel, fail to develop their preclusion theories beyond vague, conclusory invocations of different preclusion doctrines. While Plaintiffs' filings describe these doctrines in detail, there is almost no explanation of how these doctrines should have applied to this case. The Court does not see a clear statement of which claims were covered by the first arbitration, how the preclusion doctrines applied to those claims, and which of Defendants' prevailing claims should have been precluded. When Plaintiffs never appear to have developed their preclusion arguments beyond conclusory invocations of various doctrines, the Panel did not commit misconduct by failing to address them.

### 3. Dr. Lake's Testimony

Plaintiffs assert the Award should be vacated because the Panel allowed a fact witness, Dr. Robert Lake, to testify as an expert in violation of the New Jersey Rules of Evidence. Specifically, Plaintiffs assert Dr. Lake, who worked as a consultant for Pharmadent, improperly combined the functions of a fact witness and an expert witness. However, "in making evidentiary determinations, an arbitrator need not follow all the niceties observed by the federal courts." Century Indem. Co. v. Certain Underwriters at Lloyd's, London, 584 F.3d 513, 557 (3d Cir. 2009) (quoting Lessin v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 481 F.3d 813, 816 (D.C. Cir. 2007)). "Rather, an arbitrator 'need only grant the parties a fundamentally fair hearing.'"[7] Id.

---

[7] This is the same standard for misconduct pursuant to § 10(a)(3), which courts generally use to evaluate evidentiary issues in an arbitration. Plaintiffs explicitly assert the Panel exceeded its authority with its evidentiary ruling concerning Dr. Lake, an argument pursuant to § 10(a)(4).

(citing Lessin, 481 F.3d at 816). The Court concludes Plaintiffs were not denied a fair hearing because of Dr. Lake's testimony. Plaintiffs were able to raise their concerns about Dr. Lake testifying. The Arbitrators told Plaintiffs they would "take both the alleged report that's in the exhibits as well as Dr. Lake's testimony for whatever it's worth, and . . . assess and accord it the weight that [they] believe is appropriate." (Trans. 1035:25-1036:1-4). This is a reasonable approach, because the Arbitrators, as both triers of fact and triers of law, would ultimately have to hear Dr. Lake's testimony to make an evidentiary determination. Plaintiffs' assert this approach was unfair because the Arbitrators were not aware of Dr. Lake's consulting work for Pharmadent. Contrary to Plaintiffs' assertions, the Arbitrators were fully aware of this work—Dr. Lake clearly testified to that fact—so they were able to afford his testimony appropriate weight. (Trans. 1048:17-25).

### 4. Contract Issues

Plaintiffs assert various errors of contract interpretation. Specifically, they assert a failure to apply the parol evidence rule and failures to apply various canons of construction. (Pl. Br. 14-24). Issues of contractual interpretation are for the Panel to decide. Brentwood Med. Assocs. v. United Mine Workers of Am., 396 F.3d 237, 243 (3d Cir. 2005).

The Court has reviewed the Arbitration Award and concludes its contractual determinations do not constitute misconduct or irrationality. First, the Panel appears to have afforded Plaintiffs the opportunity for a fair hearing, and therefore did not commit misconduct.

---

However, Plaintiffs' arguments would also fail under § 10(a)(4) because the Panel's decision to hear evidence and weigh its probative value after the fact was not irrational in light of the PPA.

10

CPR Mgmt., 19 F.4th at 245. Each side was afforded the opportunity to present evidence relevant to the various contractual claims.

Plaintiffs assert it was improper for the Panel to hear parol evidence at various points during the hearing. Even assuming the Panel allowed the parties to present parol evidence, that decision was not misconduct. As discussed above, the Arbitrators serve as triers of law and triers of fact, so they would have needed to hear the parol evidence anyway. It light of this fact, and the relaxed evidentiary rules in arbitrations, the Panel requested the Plaintiffs to limit their parol evidence rule objections and instead argue them in their post-trial briefing. The Panel noted that because the parties could not appeal the arbitration, there was no need to have clearly articulated objections on the record. (Trans. 179:13-20; 1016:24-1017:2). This was not misconduct. It was a reasonable decision to expedite witness testimony while allowing the parties the opportunity to present parol evidence arguments in post-hearing briefing. It appears, like for preclusion, Plaintiffs did not raise the parol evidence rule in its post-trial briefing, and therefore, these arguments may have been waived for the reasons explained above. See supra section II.B.2. Regardless, by affording Plaintiffs the opportunity to make parol evidence arguments, the Panel did not commit misconduct.

Second, all of the Panel's determinations can be rationally derived from the PPA and governing law. Defendants' prevailing counterclaims—breach of the PPA and the implied covenant of good faith and fair dealing due to Facta's interference with the product's testing process—have adequate evidentiary and legal support. The Panel rationally concluded Pharmadent satisfied its obligation to use its best efforts to obtain FDA and DOD approval. (Arb. Award at 10-13). It rationally concluded a Pharmadent principal, responsible for conducting testing for the FDA and DOD approval processes, was not in breach of the PPA by delegating

11

certain testing responsibilities and engaging in other testing activities without Facta's approval because the PPA gave him "final control and discretion" over the testing. (Arb. Award at 15 (quoting PPA § 10(a) (as amended)). It rationally concluded Pharmadent did not breach a PPA provision prohibiting Pharmadent from binding Facta to any agreement or contract when there was no evidence of any such agreement in the record. (Arb. Award at 15-16). It rationally concluded Pharmadent did not breach the implied covenant of good faith and fair dealing because there was no evidence to suggest such a breach. (Arb. Award at 16). The Panel rationally concluded Pharmadent did not materially misrepresent the status of its patents. (Arb. Award at 16). It rationally concluded that Pharmadent was not required to maintain the $400,000 initial payment in a separate account when Pharmadent was required to contribute up to $400,000 of approval costs because the two $400,000 figures are merely coincidental. (Arb. Award at 17). It rationally concluded Pharmadent was not in breach of the PPA by failing to provide ribboned patent documents. (Arb. Award at 18). It rationally concluded Pharmadent was not in breach of the PPA by producing certain redacted documents during the arbitration. (Arb. Award at 18). Finally, regardless of whether Plaintiff waived its arguments concerning the parol evidence rule, there is no apparent irrationality in any of the Panel's decisions concerning parol evidence.

### 5. Patent Infringement

Plaintiffs assert the Panel erred in its patent infringement analysis. (Pl. Br. at 20). Issues of patent law are for the Panel to decide. PNY Techs., Inc. v. Netac Tech. Co., Ltd., 800 F. App'x 110, 112-13 (3d Cir. 2020). The Court has reviewed the Arbitration Award and concludes its patent infringement analysis does not provide a basis for vacatur. First, the Panel appears to have afforded Plaintiffs the opportunity for a fair hearing on their patent infringement claim, and

therefore did not commit misconduct. Second, it did not act irrationally in light of the PPA. Specifically, it was rational to conclude Pharmadent did not infringe Facta's patents by testing the product without putting it into the stream of commerce when the PPA explicitly provides a Pharmadent principal is responsible for testing the product. (Arb. Award at 27-28).

### 6. Rescission Remedy

After concluding Facta breached the PPA and the implied covenant of good faith and fair dealing, the Panel granted rescission while allowing Pharmadent to keep Facta's initial $400,000 payment, reasoning Facta's "wrongful conduct deprived Pharmadent for a meaningful period of the opportunity to enjoy the potential rewards of DOD/FDA approval and reduced the remaining life of the Patents-in-Suit." (Arb. Award at 32).

Plaintiffs argue the Panel's rescission remedy violates the PPA and justifies vacatur. The PPA's language on remedies is found in § 8.10. This section proceeds in two parts, which will be called the "first part" and "second part" for ease of reference. The first part of § 8.10 authorizes various remedies. It provides:

> Seller's remedy in the event of any claim, dispute, or controversy under this Agreement will be the recovery of money damages, subject to the disclaimer and limitations set forth in this Agreement, including, without limitation, those in Sections 8.1 through 8.3. This shall not preclude Seller from other remedies, including equitable relief, which may be appropriate in the circumstances . . . .

(PPA § 8.10). This language clearly authorizes equitable remedies. In its second part, § 8.10 provides a specific rescission-based remedy which is available if Facta failed to make a conditional $3,000,000 advanced royalty payment to Pharmadent. It provides:

> [A]nd in addition, in the event of the failure of Purchaser to make the [advanced royalty] payment called for in 3.4(b) timely, Seller shall be entitled to rescind the assignment of the patents as provided in this Agreement upon notice to Purchaser

13

>and Purchaser shall execute such instruments of re-assignment as may be necessary to restore title in the patents to Seller.

(PPA § 8.10). The Panel determined these conditions had not been met. The Panel's reasoning is supported by the record. Facta would only have owed $3,000,000 in advanced royalties after the product had been approved by the FDA or DOD, but it is clear the product never received these approvals.

Instead, based on the authorization of equitable relief in the first part of § 8.10, the Panel rescinded the PPA while allowing Pharmadent to keep Facta's initial $400,000 payment. Plaintiffs present three distinct arguments why the Court should vacate this remedy. First, Plaintiffs assert the language in the second part of § 8.10 limits the use of rescission to circumstances where Facta failed to make the advance royalty payment in a timely manner. They assert, because they were never obligated to pay advanced royalties, the Panel was not authorized to grant rescission.

Second, Plaintiffs assert that even if the Panel was authorized to grant rescission, the Panel's partial rescission remedy—rescission while allowing Pharmadent to keep $400,000 in already transferred consideration—justifies vacating the Award because it is not a valid remedy under New Jersey law. According to Plaintiffs, rescission, under the law of New Jersey, must unwind the entirety of the agreement, not merely part of it. They argue this restriction is incorporated into the PPA through its choice of New Jersey law and its language authorizing equitable remedies. By granting rescission in a manner not allowed under the law of New Jersey, they argue the Panel exceeded its authority under the PPA.

Finally, Plaintiffs assert the Panel failed to "grapple" with many of its arguments concerning rescission and equitable remedies, which the Court understands to be an assertion of misconduct pursuant to § 10(a)(3). (Pl. 2d Supp. Br. at 5).

14

First, the Panel did not exceed its authority under the PPA by granting rescission despite finding the conditions explicitly authorizing rescission in the second part of § 8.10 had not been met. The Panel impliedly determined the rescission remedy in the second part of § 8.10 was not an exclusive rescission remedy and did not limit the general authorization of equitable relief in the first part of § 8.10. This is supported by the language of § 8.10. Frankly, nothing in the PPA suggests that rescission was limited to the explicit circumstances provided in the second part of § 8.10. Rather, § 8.10 is best read to broadly authorize equitable remedies, and it included a custom remedy in the event Facta failed to pay advanced royalties in a timely manner. Therefore, the Panel did not exceed its authority by granting rescission despite concluding the conditions in the second of § 8.10 were not satisfied.

Second, the Panel's partial rescission remedy has, at a minimum, some support within New Jersey law of equitable remedies, and therefore, it rationally derives from the PPA's grant of equitable relief. Sutter, 675 F.3d at 219-20. The Panel and Defendants cite cases where a New Jersey court granted rescission but allowed one party to receive some payment for the depreciation or opportunity cost associated with the other party's possession of transferred property. See 34 Label Street Assoc. v. Cecere, Nos. A-0836-14T1, A-0183-15T1, A-0307-15T1, 2017 WL 5988064, at *7 (N.J. Sup. Ct. Dec. 4, 2017) (providing relief in the form of rescission on a commercial lease while holding the landowner was entitled to rents and expenses while the property was used by the lessee); Pavesi v. Ford Motor Co., 155 N.J. Super. 373, 379 (Ch. Div. 1978) (granting rescission on the purchase of an automobile but requiring the driver to pay the dealer and manufacturer 6.5 cents per mile driven). The property in these cases are sufficiently analogous to the patents which were held by Facta while the PPA was in effect. Additionally,

15

Defendants cite New Jersey authority supporting courts' broad discretion in crafting equitable remedies and undermining Plaintiffs' contention that rescission must always unwind all parts of a contract. See Rutgers Cas. Ins. Co. v. LaCroix, 194 N.J. 515, 528-29 (2008) ("Rescission remains a form of equitable relief in whatever setting its need arises, and courts wielding that remedy retain the discretion and judgment required to ensure that equity is done.")[8]; Am. Container Corp. v. Hanley Trucking Corp., 111 N.J. Super. 322, 334 (Ch. Div. 1970) ("The law is clear that a rescission contemplates a return to Status quo ante. But this is not an absolute requirement." (citations omitted)). This authority provides the Panel, at a minimum, a rational derivative in New Jersey law to grant its rescission remedy. Sutter, 675 F.3d at 219-20.

Plaintiffs cite various cases suggesting courts may not partially rescind a contract, or that they should not use rescission when the parties cannot be restored to the status quo before entering the contract. Plaintiffs cite Bonnco Petrol, Inc. v. Epstein, 115 N.J. 599, 612 (1989), which states: "As a general rule a contract is not to be partially rescinded." Id. This statement, however, is framed as a general rule, not an absolute rule. Defendants' authority adequately addresses that partial rescission is a departure from this general rule. These cases emphasize that such a departure is justified to achieve the goal of rescission to return the parties, or at least the non-breaching party, to the status quo before entering the contract. See Am. Container Corp. v. Hanley Trucking Corp., 111 N.J. Super. 322, 334 (Ch. Div. 1970). In fact, LaCroix quotes Bonnco to support that exact

---

[8] This language in LaCroix describes an expansive, flexible rescission remedy. However, the case may be somewhat limited to the insurance context. In LaCroix, the court allowed an innocent third party to receive certain statutory insurance benefits despite the rescission of the insurance policy in order to vindicate statutory and judicially crafted polices to protect the public. LaCroix, 194 N.J. at 527. Note, however, that 34 Label Street relies on LaCroix in justifying its rescission-plus-rent remedy. 34 Label Street, 2017 WL 5988064, at *6-7 (citing LaCroix, 194 N.J. at 527).

16

proposition. See LaCroix, 194 N.J. at 527 ("The object of equitable remedies such as . . . rescission is to restore the parties to the status quo ante and prevent the party who is responsible for the misrepresentation from gaining a benefit." (omission in original) (quoting Bonnco, 115 N.J. at 612)). Admittedly, some of Defendants' authority is framed in absolute terms. See Tonglu Rising Sun Shoes Co., Ltd. v. Nat. Nine (USA) Co., Ltd., No. 14-1634, 2016 WL 7374543, at *3 (D.N.J. Dec. 20, 2016) ("If [a party] seeks rescission, he must return the consideration he received.")[9]; Walter v. Holiday Inns, Inc., 784 F. Supp. 1159, 1166 (D.N.J. 1992) ("In order to impose rescission, '[a] court must be able to return the parties to the ground upon which they originally stood.'" (alteration in original) (quotation marks omitted) (quoting Hilton Hotels Corp. v. Piper Co., 214 N.J. Super. 328, 336 (Ch. Div. 1986))).[10] The Court need not weight these two bodies of apparently contradictory authority. Rather it is sufficient to conclude that the Panel had an adequate basis in the law of New Jersey to grant its rescission remedy. Therefore, the Panel did not exceed its authority under the PPA.

Finally, it is clear the Panel adequately addressed Plaintiffs' arguments concerning rescission, and therefore did not commit misconduct. See CPR Mgmt., 19 F.4th at 245. It offered a fair process for the parties to dispute what remedies the Panel should grant. Specifically, the Panel requested supplemental briefing on rescission, which allowed Plaintiffs to raise concerns

---

[9] Plaintiffs note this opinion was authored by the undersigned. However, the present inquiry is not whether this Court, or any other court applying the law of New Jersey, would have crafted the Panel's remedy. The Court is merely reviewing the law of New Jersey to determine whether the Panel could rationally conclude its remedy was authorized by the PPA.

[10] Plaintiffs cite an additional case which uses absolute language, Spencer Savings Bank, S.L.A. v. Bank of America Corp., No. 14-4633, 2015 WL 3965625, at *5 (D.N.J. June 30, 2015). But that case is applying California law concerning rescission, and therefore has no bearing on the Panel's authority under the PPA.

17

about such a remedy. (Pl. Exhibits N, O). Afterward, the Panel adequately addressed Plaintiff's specific concerns. It concluded that it had authority to grant equitable remedies notwithstanding that the conditions in the second part of § 8.10 had not been met. (Arb. Award at 30). It provided an equitable justification for rescinding the PPA while allowing Pharmadent to keep the $400,000 payment, specifically that Facta's "wrongful conduct deprived Pharmadent for a meaningful period of the opportunity to enjoy the potential rewards of DOD/FDA approval and reduced the remaining life of the Patents-in-Suit." (Arb. Award at 32). And the Panel provided sufficient support in the law of New Jersey for its partial rescission remedy. (Arb. Award at 31). Because the Panel adequately addressed Plaintiffs' arguments concerning remedies, it did not commit misconduct.

### C. Evident Partiality

Plaintiffs assert the Arbitrators were biased against them. The FAA allows for the vacatur of an arbitration award if "there was evident partiality or corruption in the arbitrators, or either of them." 9 U.S.C. § 10(a)(2). Vacatur of an arbitration under § 10(a)(2) based on "evident partiality" is only appropriate when "a reasonable person would have to conclude that [the arbitrator] was partial to one side." Freeman, 709 F.3d at 253. An appearance of bias is not enough to vacate an award. "Rather, the arbitrator's bias must be sufficiently obvious that a reasonable person would easily recognize it." Id.; see also Andersons, Inc. v. Horton Farms, Inc., 166 F.3d 308, 329 (6th Cir. 1998) ("The alleged partiality must be direct, definite, and capable of demonstration.").

Plaintiffs' accusations of bias are entirely conclusory. They cite the asserted various errors of fact and law discussed above and conclude from those asserted errors that the Panel must be

biased. They do not provide a reason why those asserted errors of law are attributable to bias.[11] Therefore, they do not meet the standard for showing "evident partiality" discussed in Freeman. Id. Instead, it appears Plaintiffs simply disagree with the Panel's various determinations law and fact. However, legal or factual errors are not bases to vacate an arbitration award. France, 43 F.4th at 377. Accordingly, there is no basis to vacate the Award for evident partiality.

### III. Conclusion

For the foregoing reasons, the Court grants Defendants' motion to confirm the Arbitration Award and denies Plaintiffs' motion to vacate the Arbitration Award. An appropriate order will be filed.

                                               s/ Stanley R. Chesler
                                               STANLEY R. CHESLER
                                               United States District Judge

Dated: June 13, 2023

---

[11] Plaintiffs speculate as to a motive for the Panel's alleged bias in the Hittman Certification. Specifically, they assert the Panel may be biased because the Plaintiffs sought judicial rulings from this Court during the pendency of the arbitration. (Hittman Cert. ¶ 243-44). This speculative assertion is not proper to include in a certification pursuant to Local Rule 7.2(a), and therefore, it will not be considered. Even if the Court were to consider this assertion, an alleged motivation is not sufficient to establish partiality under the Freeman standard. Freeman, 709 F.3d at 253.